Good morning. May it please the court, my name is Alejandra Bird Lopez and I represent Mr. Regilton Rios-Rivera in this appeal. I'd like to reserve two minutes for rebuttal. My client became sexually involved with a teenager and took her to a motel on several occasions. For this he was sentenced to 18 years of prison in a federal prison. Now we don't condone this behavior, obviously, which is rightly punishable under the criminal laws of Puerto Rico and other U.S. jurisdictions. But this conduct, this particular conduct is not punishable as a federal offense when it occurs within a state of the union, but only when it occurs within a commonwealth territory or possession of the United States like Puerto Rico. The statute of conviction in this case is unconstitutional under the Equal Protection Clause. What's the standard of review that we would use for those two issues? The standard of review is de novo review, your honor. The government has argued that plain error review applies because the argument was not raised below. But this court in DeSanto, in the DeSanto case which is cited in the reply brief, has ruled that a constitutional challenge to the validity of a statute can be raised for the first time on appeal. Now an important note on DeSanto is that I have seen a comment in a footnote that this ruling of that case is dicta and nothing could be further from the truth. Does DeSanto hold that when it is raised for the first time on appeal it's reviewed de novo? It did, your honor. It said we review a determination, a claim that the statute is unconstitutional may be raised for the first time on appeal. We review a determination of the constitutionality of a federal statute de novo. That holding was essential in the DeSanto case. The case ruled that concluded after analyzing that it would reject the Commerce Clause challenge, it ruled that because we find no basis to question the presumed validity of the section that was being challenged, we conclude that the district court properly had subject matter jurisdiction conferred by virtue of the fact that appellant was charged with an offense against the United States. So that is the law of the circuit. I realize there is a conflicting law in the circuit, but the rule in virtually every circuit is that the earlier president holds unless it is overruled by a panel opinion or by the Supreme Court. So even so, under plain error, the challenges to the constitutionality of the statute would also be successful. That the Commerce Clause applies in Puerto Rico is also precedent of this court. In U.S. v. Morrison, the Supreme Court used four factors to determine whether the conduct required their substantially affected interstate commerce. Before you get to the Commerce Clause, just to understand your argument, the premise of your argument is that the Territorial Clause is inapplicable? Well the Territorial Clause doesn't give us the answer to the question here. I'm trying to figure out why. In other words, if the Territorial Clause applied, would it permit this statute? The term Territorial Clause doesn't in and of itself hold a defined meaning. Puerto Rico can be described and is described in some statutes of the United States and in others it is excluded from that definition because it is not a state of the United States. And in that sense, Puerto Rico is a territory. I'm asking a different question. If the Territorial Clause applied, would this type of statute be a statute that could be enacted under the Territorial Clause? Imagine it's not Puerto Rico, a different territory. Well if the territory were not governed by a constitution, if there weren't the kind of change that occurred in Puerto Rico under the constitution. I know, I want to just understand that, put aside that, just so I understand what the argument is. One possibility is to say the Territorial Clause itself in any territory is coextensive with the Commerce Clause and so it doesn't give Congress any more power than the Commerce Clause would. That would be one kind of argument. A different kind of argument is the Territorial Clause does give plenary power or more power than would exist under the Commerce Clause, but because of the change in the status of Puerto Rico, the Territorial Clause can't be relied, in this instance, to do more than the Commerce Clause would allow. I'm just trying to figure out which of the two arguments you're making. The Territorial Clause initially governs any territory or possession of the United States. The Territorial Clause authorizes Congress to make whatever arrangements for the administration of that territory it wishes. In this case, an important change was made in 1952. Prior to that change, the Territorial Clause gave either plenary power or at least police power over Puerto Rico. After 1952, Congress no longer has that police power and the Commerce Clause does apply, according to the precedents of this circuit, to Puerto Rico. And is that because your argument is that suppose Congress, in a statute post the change of the status of Puerto Rico, expressly says it's relying on the Territorial Clause. Is your argument that Congress no longer can do that or is your argument that Congress should be presumed not to be relying on the Territorial Clause after the change in Puerto Rico? I would have to answer that it would depend on what it's doing. If with its statute, it means to regulate as a police power with police powers Puerto Rico, then it would not be able to do that. Even if it expressly said that it was relying on the Territorial Clause to do that? I believe that's correct. Now, I realize that there is a law that prescribes or that purports to be enacted, a recent law, under the Territorial Clause and under the authority granted by the Territorial Clause. Now, it may be that the particular situation with that law can be analyzed, but if it is a... Just going back, is there any indication in legislative history as to this statute, what power Congress was purporting to rely on in enacting the statute? Originally, yes. In 1910, it seemed to be using its police power over territories and the District of Columbia to regulate the internal affairs of those territories. Afterwards, there have been amendments to this law and there has been no explanation as to why after 1952, it has continued to attempt to govern the internal affairs of those territories and on what basis it has done so. The legislative history is silent on that matter. Now, the four factors that are identified in Morrison for a Commerce Clause challenge are... That went quickly, didn't it? Yes, that went awfully quickly. We do have the four factors from your brief. Okay. If you have any other questions, I'm happy to address them. We may. Judge Thompson? I'm all set. Thank you. You have reserved some time. Okay. Thank you. Good morning. May it please the Court. Julia Maconiatis for the United States. Now, Rios has failed to establish error, let alone plain error, in Congress's enactment of Section 2423A. And while he attempts to argue that the standard of review is de novo, this Court has specifically stated that it, in fact, is plain error. In Carrasquillo-Peñalosa, this Court explained that a challenge to the Commerce Clause as a valid exercise of Congress's power was, in fact, non-jurisdictional. And in that case, it also cited Tehnoesi Peña, which was cited in the government's brief also to show that when claims, constitutional claims, are raised for the first time on appeal and in Tehnoesi Peña, it was the validity of Congress's authority to act the MDLEA, this Court reviewed them for plain error only. Likewise, this Court has reviewed for plain error claims of Congress's authority under Commerce Clause when they are raised for the first time on direct appeal. Now, since that is the correct standard, it is the appellant's burden to establish Is it fair to say that the way that works is that a constitutional claim challenging subject matter jurisdiction gets de novo review, can be raised at any time, gets de novo review? And in addition to that, the Blackledge-Mena line of cases, that is the power of the prosecutor to bring the case which may not necessarily be subject matter jurisdiction, can also be  Now, what about the government's position after class? Well, the government's position after class, Your Honor, is that this type of challenge, a challenge per the Commerce Clause, whether the Congress has exceeded its authority under the Commerce Clause, is not indeed a challenge to subject matter jurisdiction. And this Court in Carasquillo-Peñalosa specifically stated, and I quote What I'm really asking about is class. Well, class, Your Honor, what class did is in Carasquillo-Peñalosa, this Court took it one step further and said because it was not a jurisdictional challenge, therefore by virtue of the unconditional guilty plea, it was waived and it could not be brought up. And Carasquillo-Peñalosa noted it was not jurisdictional and then taking, noting previous case law in the First Circuit, said that such a claim was waived by virtue only of the unconditional guilty plea. That was what the government argued in our brief originally, that this was waived. Since class came up less than two weeks ago, I believe it came up, two weeks will be on tomorrow. Seems like ten years. Since that happened, the government has stepped away from that original position because it seems that now pursuant to class, you can attack the validity of the constitutional validity of the underlying statute. Be that as it may, it still can engender plain error review if you failed to bring this issue up to the district court below. And in any event, it's the government's position that it was not error, let alone plain error, which should be the appropriate standard in this case, because of the territorial clause and the commerce clause. Now specifically, this Court determined that the Mann Act was a valid exercise of Congress's power pursuant to the territorial clause in CRESPO. I just had, just so I get the, I take it the government accepts that we review the constitutionality of the statute based on the power Congress claims to be relying on to enact the statute. Yes, Your Honor. So what's the government's answer to the suggestion that post the change in status, absent some express indication that Congress is intending to rely on the territorial clause for what it's doing, we should presume that Congress was relying on the territorial clause? Because I take it your argument is predicated on the territorial clause being the basis of the power. Yes, Your Honor. And that is precisely what this Court and the Supreme Court has done after the enactment of the Puerto Rico Constitution in 1952. The Puerto Rico Constitution was enacted in 1952, and if you look at the legislative history of public law 600, it stated that the United States-Puerto Rico relationship was not going to change. What the Constitution did was allow that Puerto Rico would have a greater extent of autonomy but that relationship of territory and federal government did not change. And the Supreme Court so held in Harris v. Rosario in 1980, in which that case the issue was whether recipients for children, I believe it was they had needy children, whether they could have received less funds than individuals in the states. And the Supreme Court noted that Puerto Rico is constitutionally a territory and can be treated differently as a territory. In that case, they found that it was valid because these families, these residents did not contribute directly into the treasury and that treating Puerto Rico as a state, in fact, would be too costly. And we need not go further than 2015 with this Court's decision in Franklin, the Puerto Rico case, where this Court noted that Puerto Rico is constitutionally a territory. And when it was explaining how Congress treated Puerto Rico differently in terms of whether Puerto Rico, unlike the states, didn't have the authority to authorize its municipalities to seek bankruptcy, it explained the difference of Puerto Rico as a territory versus the states and noted that the federal bankruptcy law as written was consistent with Congress's plenary powers conferred by the territorial clause, that it can treat Puerto Rico differently. And this Court so held that that statute was valid and preempted the local law. There is nothing that has changed the federal government's ability to legislate differently from Puerto Rico. And this Court, even after the enactment of the Puerto Rico Constitution and post- I was going to say a different question, but not so much whether they have the authority to do it, it's how do we know whether they've chosen to assert that authority? One possibility is we assume that they would invoke any power that would permit them to do what they've done. Another possibility is they have to be expressly identifying the power that they relied on. I take it here, we don't, there's no provision in the legislative history or in the text of the statute saying this enactment was made pursuant to the territories clause, right? No, Your Honor. But also pursuant to Supreme Court jurisprudence, congressional action can be upheld even if it's unsupported by the Commerce Clause as long as there is a valid exercise of some other constitutional grant of authority. And that was cited in our brief. And so because there is a valid constitutional grant of authority that this Court has already spoke about in CRESPO and nothing appears to have changed, nor has this Court or the Supreme Court have held that the enactment of the 1952 Constitution changed the relationship of Puerto Rico vis-a-vis the United States in Congress's authority to legislate, the territorial clause here saves the day. And even if it didn't, it's the government's fallback position that this statute is also valid as a proper exercise under the Commerce Clause. Now, the government is cognizant that at the time of the briefing, we stated the two easiest paths of affirmance as they had binding precedent at the circuit and noted that the legal panorama could have changed depending on the Supreme Court's decision in class. And we stated that we would seek leave if the Court deemed appropriate to present our Commerce Clause arguments. Now, because of the short timeframe, it wouldn't have given the government enough opportunity to present these arguments and enough opportunity for the appellant to then contest them. But if this Court so desires, we would seek permission to present those arguments if they're deemed necessary in addition to our Territorial Clause argument, which we feel the Court need not even get to the Commerce Clause because the Territorial Clause in this instance provides a proper grant of Congress's authority to legislate differently for Puerto Rico. So I just have one follow-up question. You cite Harris and I think to a certain extent Califano, but the argument that's being raised here by Mr. Rios that the approval of the Constitution actually sort of shrunk Congress's territorial enactment power with respect to Puerto Rico was never made in those cases, was it? Or do you know? I'm not certain. I think they're both per curiam decisions and I didn't see any reference to it. They are, Your Honor. But to the extent that this Court in the Bankruptcy case spoke of the Court's territorial power and the fact that it can legislate differently with a law, the bankruptcy law, that at that moment did not state why it was doing what it was doing with the 1904 amendments that were made to authorize bankruptcy of its municipalities, there the Court had no problem in explaining how the difference could have been because Puerto Rico can be treated differently pursuant to power systems. What about Examining Board, the Supreme Court case that says that part of the approval of the Constitution allowed Puerto Rico to manage its own internal affairs? Yes, Your Honor, but this is an issue of an internal affair here. This is an issue of how Puerto Rico and how Congress has determined that this type of activity has a federal impact in addition to undoubtedly any state impact that it may indeed have. And that is also amply supported by the Commerce Clause also, which it's the government's contention that this activity, even purely intrastate activity, if it forms an economic class of activities that substantially affects interstate commerce under Gonzales v. Reich of the Supreme Court, that that even under the Commerce Clause would be sufficient. Why do you suppose Congress found the need to expressly use the word Commonwealth if the Territories Clause is sufficient and it already says territories in this specific statute? When you look at the PROTECT Act and the 1998 amendments, it was specifically designed to heighten all of the penalties that had to deal with sex crimes against children and exploitation of minors. And at this point it was almost unneeded and redundant, citing to your denial of the embank in Maldonado Burgos. At that point it was obvious after over 60 years of CRESPO being the lay of the land, Congress never tried to do anything to the contrary. And quite frankly, that addition of the language was not, there's no legislative history as to why it was indeed amended to include that. Could you just, maybe I missed it, did you have an answer to DeSantos? I mean, how am I, I take your view that it's not an over review, it's a plain error review. Yes, Your Honor. What's your answer to why, to DeSantos? Is DeSantos just in conflict with that provision, but you're saying we should go with a different way? Is there some way to distinguish DeSantos? Your Honor, well, I would distinguish DeSantos with Carasquillo-Pena Loza, which is exactly on point of this case. It's the same exact argument made to deal with the Mann Act, the Commerce Clause, and appellant was indeed aware of it as he shares the same attorney as Carasquillo-Pena Loza. Aside from it being a different statute, though, is there anything about DeSantos that's different than this case? Your Honor, currently I cannot answer that question, but if you would like, I would submit supplemental briefing if Your Honor would like the government's response to that. It was our original argument that it was waived and in any event, plain error. So the government essentially provided the first path of affirmance under Carasquillo-Pena Loza's waiver argument, and obviously that has fallen now by the wayside because of class. But if you would like us to further expand on why plain error, we would be happy to do so in a supplemental brief. We'll let you know. Thank you, Your Honor. Judge Thompson, any questions for the government? Yes, I understand that the government's brief focused on the Territorial Clause and didn't address the Commerce Clause, but I'm trying to figure out why the government did not address our decision in U.S. v. Maldonado-Burgos, which is my understanding, the government made a decision not to petition to the Supreme Court. Your Honor, it's the government's position that this issue brought by Mr. Rios is an issue of whether Congress has exceeded its authority, either pursuant to the Territorial Clause or to the Commerce Clause, and that deals with the constitutional status of Puerto Rico. In Maldonado-Burgos, it was an issue of statutory interpretation, whether Puerto Rico should be considered a territory or possession of the United States. It specifically did not state that Puerto Rico's status was not a territory, and it was actually a different statute at issue. Interestingly enough, this court in Maldonado-Burgos specifically noticed that it was not discussing the constitutional relationship between Puerto Rico and acknowledged Congress's authority to legislate for Puerto Rico differently than states. This is an issue of, currently an issue, of whether the Congress exceeded its powers under the Constitution, whereas Maldonado-Burgos was an issue, we have a statute, how should we classify Puerto Rico pursuant to the statute, as a territory or as a state? So the result, then, if we agree with you, is that we will have a Mann Act statute that is in part applicable to Puerto Rico and in part inapplicable. Yes, Your Honor. I take it that's because you say the defendant has waived any argument that the statute should be interpreted not to apply to Puerto Rico. Your Honor, I actually believe that in the briefing, the defendant concedes the argument that it does, holding that the fact that 2423A includes the word commonwealth and puts a lot of emphasis on the fact that because of the 1952 Constitution, an act in Puerto Rico is now a commonwealth, that they're not even bringing such an argument. Judge Thompson? Yeah, I'm good, thank you. Okay, thank you. Ms. Byrd? Carrasquillo-Peñalosa did not reach the merits, it did not even reach the standard of review. I don't know that we need to get hung up on the word jurisdictional here. The fact is that DeSantos rules that a claim that a statute of conviction is unconstitutional may be raised for the first time on appeal. And that was a case that was directly on point, it was a commerce clause challenge to a criminal statute. Now, even under plain error review, we understand that the commerce clause challenges and equal protection challenges will prevail because the four factors in Morrison are clearly all against the government in this sense for the commerce clause challenges. And in the equal protection challenge, I'm sorry, there is a classification, clearly it treats intra-jurisdictional transportation differently in Puerto Rico than it does in a state of the United States. There is a fundamental interest at stake, personal liberty. And that means that the statute would have to be narrowly tailored to serve a compelling government interest. No compelling government interest has been identified. And even if it were, it would have to be explained why it would not allow, why it would not be proper to apply the restriction on that transportation to intrastate transportation. Now, the CRESPO ruling, as was earlier pointed out, has to be called into question under Maldonado-Burgos because Maldonado-Burgos acknowledged that the situation or Puerto Rico's susceptibility to congressional action is different after 1952. Harris v. Rosario, which was mentioned, the reasons that Harris v. Rosario should be, if I could just finish my, a couple more thoughts. Harris v. Rosario should be interpreted narrowly or explained in the reply brief extensively. So I would just refer the court to the reply brief. And the statement in Franklin, in the Franklin case that mentioned that Puerto Rico continues to be constitutionally a territory really does not address the question that is presented before the court here. It makes the distinction between statutorily a territory or a state, which occasionally happens statutorily, Congress may define Puerto Rico either as a state in a statutory context, but in the constitutional context, since we are not a state, we are a territory. But that doesn't mean that Congress has the same plenary power it had before 1952. The government should not be allowed to file a supplemental brief. It should have addressed equal protection arguments and Commerce Clause arguments in its principal brief. But if, if it is allowed to address those, we would request an opportunity to, to respond, certainly, because we are at a disadvantage. We cannot contest, especially the equal protection argument, unless the government has put forth what its interest is. I understand. Judge Thompson? I'm fine, thank you. We're good. Okay. Thank you very much.